## WETTLAUFER *v*. AMES.

1. Dower—Merger—Presumptions.

    Where all of the heirs of a deceased landowner quitclaimed to the widow, who afterwards reconveyed to the heirs, reserving her dower right, *held*, that such right remained in the widow, an intention that it should not merge by the deed to her being presumed as in accordance with her interest.

2. Same—Assignment—Partition—Appeal.

    While, under 3 Comp. Laws, § 11016, dower may be set off in an ordinary partition suit, the court's refusal to do so, on the ground that the right had become extinguished, can be complained of only by the claimant.

3. Easements—Merger—Revival.

    Where the owner of a lot entitled to an easement over an adjoining lot acquired the fee in the servient estate, and later, and while the easement was being used, deeded the two lots to different parties, the easement, which had been merged in the fee, was revived.

4. Partition—Mortgage Sale—Redemption.

    Under 3 Comp. Laws, § 11020 *et seq.*, § 11050 *et seq.*, a tenant in common can maintain a partition suit against his cotenant, though the latter has redeemed the property from a foreclosure sale, and the former has neither paid nor tendered his share of the cost thereof.

5. Tenancy in Common—Accounting—Rent.

A tenant in common may, on an accounting with his co-
tenants, be charged with rent for his occupancy of the prem-
ises, if in accordance with the understanding of the parties.

6. Same—Redemption—Interest.

A tenant in common who redeems from a mortgage foreclosure
is entitled to interest on the amount paid, as against his co-
tenants, at the legal rate, rather than at the rate borne by
the mortgage.

Cross-appeals from Wayne; Donovan, J. Submitted
January 7, 1903. (Docket No. 10.) Decided May 12,
1903.

Bill by John C. Wettlaufer and Henry Wettlaufer
against Annie C. Ames, August F. Wettlaufer, Mary
Berringer, and Mary Wettlaufer for a partition. From
the decree rendered, complainants, and defendants Ames
and August F. Wettlaufer, appeal. Affirmed.

*Walker & Spalding*, for complainants.

*Charles W. Casgrain*, for appealing defendants.

Hooker, C. J. Previous to his death, Frederick
Wettlaufer was the owner in fee of a parcel of land and
two-story brick building thereon, at the corner of St.
Antoine and Mullett streets, in the city of Detroit, which,
for convenience, we will call "Lot A." Adjoining it on
the north was an elbow-shaped lot, fronting on St. Antoine
street and Gratiot avenue, described as lot 7. The
accompanying plat will serve to show the situation of the
premises.

Lot 7 was owned jointly by Frederick Wettlaufer and
his wife, Mary. Lot A was wholly covered by a brick
building, the dotted lines on the plat showing wooden
partitions, by which the building was divided into three
store rooms. At the north end there was a passageway
six feet wide, with a door near the west end of the north
wall of the building, opening upon, and giving access to,

the adjoining lot 7, which was covered by a brick dwelling
fronting St. Antoine street, and a brick store fronting
Gratiot avenue.   The passageway furnished the only
means of access to the back rooms of these buildings, ex-
cept through the buildings themselves, from their respec-
tive front entrances.   The sewer drain for all of the build-
ings was underneath the passageway mentioned.

After the death of Frederick Wettlaufer, his widow,
Mary, deeded lot 7 to the complainants, John and Henry
Wettlaufer, her sons, and lot A was deeded to her by all
of the heirs of Frederick, viz., all of the parties to this

suit except herself.   They were all sons and daughters of
Frederick and herself.   Subsequently some dissatisfaction
arose over the appropriation of the rents received from lot
A, and Mrs. Wettlaufer deeded lot A to the five sons and
daughters, reserving her right of dower, and on the same
day, though later, deeded her interest in lot A to the com-
plainants, who thereupon made a claim of ownership.
They afterwards filed the bill in this case, asking an
accounting for the rents and profits and a partition of the
lot A.   The bill alleges that Mary Wettlaufer is entitled
to her dower interest therein.   The bill was taken as con-
fessed by Mary Berringer and Mary Wettlaufer, the

widow.   August F. Wettlaufer and Annie C. Ames answered.

At the time Frederick died, there was a mortgage upon lot A.   The premises were afterwards redeemed after foreclosure by August F. Wettlaufer and Annie C. Ames. Annie and her husband afterwards occupied a portion of the premises upon an agreement of the husband to pay rent, which he did.   After his death she continued to occupy the premises, and part of the time, at least, paid some rent, under an agreement with August, to whom she paid it.

The complainants ask the benefit of an accounting of the rents and income received from, and the disbursements and liabilities incurred on behalf of, the property by all of the parties, and that the amounts found due to and from the respective parties be decreed to be liens on the respective debtors; that Mary Wettlaufer's dower be admeasured, and that the decree direct the manner in which the same shall be satisfied and discharged; and that partition be had of the property, and, if division of the same cannot be made without great prejudice to the owners, a sale may be had, and the proceeds divided as the interests of the respective parties may be found.

Upon a hearing of the cause the trial court decreed that each of the parties, except the widow, had an undivided one-fifth interest in the premises, subject to certain deductions, which constituted liens; that Mary Wettlaufer had no interest in the premises.   An account was taken, in which each party was credited with his or her disbursements, and charged with a share of the mortgage debt paid by Annie C. Ames and August F. Wettlaufer.   Such parties as had received rents were charged with them, and Annie C. Ames was charged with rent for the premises occupied by her, while such as had made disbursements were credited with them.   The premises were found to be so situated that a partition would be prejudicial to the owners, and it was decreed that they be sold, and the proceeds divided, such sale to be subject to an easement in

favor of the complainants, their heirs and assigns, for their access to lot 7. A solicitor's fee of $150 was allowed to the complainants, in addition to the taxable costs and expenses of the suit and sale, to be paid out of the fund.

The defendants August F. Wettlaufer and Annie C. Ames and the complainants have appealed. The complainants urge:

1. That dower should be set off to the widow.

2. That the property should be partitioned, or, at least, that the north store should be set off to them, which portion should include the six-foot passage mentioned. They were indifferent as to the sale of the other part of the premises.

The defendants contend:

1. That, inasmuch as the complainants have neither paid nor tendered their share of the cost of redemption of the premises, they cannot have a partition.

2. That, if this is not so, no allowance for dower should be made.

3. That Mrs. Ames should not have been charged with rent, because, as a tenant in common, she had a right to occupy the premies without charge.

4. The property should not have been sold subject to the easement.

5. Interest upon the money paid for redemption should have been at the rate of 8 per cent., that being the rate fixed by the mortgage; citing 2 Comp. Laws, § 4865.

6. The solicitor's fee of $150 was excessive.

The defendants say that the right to dower was extinguished by merger when they united in a quitclaim of the premises to their mother. We are of the opinion that a different intention may reasonably be deduced from the circumstances. The rule that a merger will not be found, in the absence of expressed intention, if a continuance of the lesser interest is beneficial to the owner, applies. That is the rule as to cases where a mortgage is purchased by the owner of the fee. See 20 Am. & Eng. Enc. Law (2d Ed.), 1064. Among the many cases cited in support of this are the following Michigan cases: *Bassett* v. *Hathaway*, 9 Mich. 28; *Powell* v. *Smith*, 30 Mich. 451;

*Ann Arbor Sav. Bank* v. *Webb,* 56 Mich. 377 (23 N. W. 51); *Cook* v. *Foster,* 96 Mich. 613 (55 N. W. 1019); *Burt* v. *Gamble,* 98 Mich. 409 (57 N. W. 261), and cases cited; *Ten Eyck* v. *Railroad Co.,* 114 Mich. 499 (72 N. W. 362); *Quick* v. *Raymond,* 116 Mich. 15 (74 N. W. 189). Many cases hold that merger will never be allowed in equity, unless for special reasons, and that, at the least, it is a matter of intent, which will be presumed in accordance with the interest of the owner. See 20 Am. & Eng. Enc. Law (2d Ed.), 590, 591, and notes. We have no difficulty, under such a rule, in holding that there was no merger. The dower interest remained in the widow, unless it was devested by her quitclaim deed to John and Henry, it having been reserved in her earlier deed to the five children; and as John and Henry do not claim it, but admit that it is still in the widow, and ask that it be set off to her, we need not discuss its whereabouts further, but only the question whether it should be set off to her in these proceedings. That it might have been is settled by 3 Comp. Laws, § 11016; but the widow has not appealed, and the complainants cannot complain of the decree so far as her interests are concerned.

We are satisfied that the learned circuit judge was justified in requiring all of lot A to be sold, rather than to set off a portion of it to the complainants, and that he did not err in directing that it be sold subject to an easement appurtenant to lot 7. The record indicates that, previous to the time that Frederick Wettlaufer became the owner of these premises, a strip of land about six feet wide extended along the short side of lot 7, and in the rear of lots 1, 2, 3, 4, 5, and 6, and there was and still is a sewer there, which we infer to be still in use by the owners of lots A and 7, and perhaps other lots, through which it extends. Apparently a hallway for common use extended through the various buildings built over this strip, for the testimony shows that, when Frederick Wettlaufer bought lot A, he made an arrangement with the property owners to discontinue this hall on the other property. Upon the

death of Frederick, his wife became sole owner of lot 7 by survivorship, and a month later she acquired a full title to lot A. The effect of this was to merge the easement in her more complete title. The building was then erected on lot A, in which this hallway was preserved, and from the northwest corner a door opened into a hall in the rear of the brick dwelling, through which access was had to the brick block on Gratiot avenue. Some four years later she deeded this lot A to her five children, reserving her dower rights, as already stated. On the same day she conveyed lot 7 to the complainants, after deeding lot A, as aforesaid. At this time the hall was plainly in use as an appurtenance to lot 7. The defendants must have known it, as well as the fact that the sewer was in use, and that the drainage from the roof of the buildings on lot 7 ran into it. Under these circumstances, we think the old easement was revived. Mary Wettlaufer clearly manifested her intention that the hall should be used as appurtenant to lot 7. Had she sold lot 7 to a stranger and retained lot A, an easement would have passed with the property. The defendants, who took title to lot A in common with the complainants, should be held to have taken the land subject to the easement. *Kieffer* v. *Imhoff*, 26 Pa. St. 443; *Phillips* v. *Phillips*, 48 Pa. St. 178 (86 Am. Dec. 577); *McCarty* v. *Kitchenman*, 47 Pa. St. 241 (86 Am. Dec. 538); *Pennsylvania R. Co.* v. *Jones*, 50 Pa. St. 424; *Overdeer's Adm'r* v. *Updegraff*, 69 Pa. St. 119; *McTavish* v. *Carroll*, 7 Md. 360 (61 Am. Dec. 353); *Brakely* v. *Sharp*, 9 N. J. Eq. 14; *Dennis* v. *Wilson*, 107 Mass. 591.

In Vermont and Massachusetts it has been held that one is not entitled to partition against his co-tenant holding under a valid tax title, or one who has redeemed from a foreclosure sale. See *Hurley* v. *Hurley*, 148 Mass. 444 (19 N. E. 545, 2 L. R. A. 172); *Wilmot* v. *Lathrop*, 67 Vt. 671 (32 Atl. 861). It is said that the case of *Reed* v. *Reed*, 122 Mich. 77 (80 N. W. 996, 80 Am. St. Rep. 541), has committed this court to the same doctrine; but we

think otherwise. A different question was involved in that case. In Vermont and Massachusetts a mortgagee takes the legal title in the land mortgaged. That is not so in Michigan; therefore it cannot be said that co-tenants have no rights of possession against a mortgagee or his assignee, whose redemption inures to the benefit of his cotenants. But, whether or not this distinction is a sufficient reason for not following these cases, our statutes seem to contemplate that persons holding mortgages and other liens may be made parties, and their interests adjusted, in partition proceedings instituted by owners of the land. 3 Comp. Laws, § 11020 *et seq.*, § 11050 *et seq.*

We are of the opinion that Mrs. Ames was rightfully charged with rent, taking into consideration the nature of her occupancy and the understanding of all of the parties, at the sum fixed by the decree.

We think that the rate of interest was correctly fixed by the learned circuit judge, and that we should not interfere with his discretion in the matter of costs.

The decree is affirmed, without costs to either party.

The other Justices concurred.