**Harold P. KNIGHT, as Assignee of National Bank of Commerce, Plaintiff-Appellee,**

v.

**Edward C. WIROTZIOUS, Defendant-Appellant.**

**No. 73–2930.**

United States Court of Appeals, Fifth Circuit.

June 10, 1974.

John P. Carlton, Donald B. Sweeney, Jr., Birmingham, Ala., for defendant-appellant.

Manuel Levine, Birmingham, Ala., for plaintiff-appellee.

Before BROWN, Chief Judge, and GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

Knight sued Wirotzious claiming contribution for having paid their joint and several obligation owed to the National Bank of Commerce. Wirotzious filed a counterclaim seeking contribution from Knight for discharge by Wirotzious of a debt of Saltzman Machine & Fabricating Company that had been guaranteed by the two of them. After a nonjury trial the District Court found in favor of Knight on both his claim and the counterclaim.

## 1. Knight's claim.

■ The only issue with respect to the claim is whether the court erred in awarding attorney fees to Knight. The obligation to National Bank of Commerce was in the form of several renewal notes, all of which except the last were executed by Knight and Wirotzious as co-makers. The last renewal note showed Wirotzious as maker and Knight as endorser. The District Court found that the obligation under all the notes was joint and several, that Knight had paid the note which was then assigned to him by the bank, and that Knight was entitled to contribution in the amount of one-half thereof. Also it held that Knight was entitled to a reasonable attorney's fee, citing Somerall v. Citizens' Bank, 211 Ala. 630, 101 So. 429 (1924). We agree with Wirotzious that an attorney's fee was not proper. Knight's claim arose out of his right of contribution as a joint obligor who had discharged the debt in full and was based upon the implied promise of his fellow obligor to pay his just share. Knight's right to recover was not predicated upon the note as an evidence of the indebtedness. Yet Knight, given no right to fees by statute or by the law of contribution, relies upon the boilerplate attorney's fee provision of the notes. We are referred to no authority permitting this, and we find none. *Somerall,* cited by the District Court, refers to the right of a holder of a note, in a second trial of a suit against an endorser, to recover its attorney fees incurred in an appeal from the first trial. More apposite are cases holding that one who has discharged a note and sues for contribution is entitled to the legal rate of interest and not to the rate provided by the note.[1]

## 2. Wirotzious's counterclaim.

Saltzman Machine had a continuing line of credit with City National Bank induced by separate and identical guaranty agreements executed by Knight, Wirotzious and Frank Saltzman. February 28, 1968, City National wrote jointly to Knight and Wirotzious stating that Saltzman Machine had an accounts receivable loan of $38,122.00 which should be paid in 30 days, and an open note for $11,660.40 which was being reduced $2,000 every 90 days, and "Upon payment of these two notes, we will cancel your blanket guarantee." Some 15 months later, May 12, 1969, the bank's liability ledger sheet on Saltzman Machine showed that a balance of $10,101.-32, plus interest, was paid. The payment consisted of Wirotzious's delivering to the bank his personal note for the balance plus interest and premium for credit life insurance on his life.[2]

Wirotzious's position is that both his and Knight's separate guaranties re-

---

1. *Dileo v. Dileo,* 217 La. 103, 46 So.2d 53, 57 (1950), (where four co-tenants joined in making notes to town in order to satisfy paving lien assessment and later two of them purchased the notes from town, the two purchasers are entitled to pro-rata reimbursement from the other two co-makers; but purchasers are not entitled to attorney's fees or to the interest rate established by the notes, since their suit was not on the notes but for reimbursement); *Wettlaufer v. Ames,* 133 Mich. 201, 94 N.W. 950 (1903); *Appleford v. Snake River Min., Mill. & Smelting Co.,* 122 Wash. 11, 210 P. 26 (1922); *Bushnell v. Bushnell,* 77 Wis. 435, 46 N.W. 442 (1890). See also *Gordon v. McLemore,* 237 Ala. 270, 186 So. 470 (1939) (cotenant claiming from other cotenants contribution of a pro rata share of taxes paid on land not entitled to an attorney's fee).

2. Wirotzious has since paid the note in full.

mained in effect and he, having paid the debt, is entitled to contribution from Knight as co-guarantor. The District Court found that Knight's guaranty was cancelled because the conditions set out in the letter of February 28 were met. Knight's argument on appeal is that the court was correct and that in fact both guaranties were cancelled.[3]

 Wirotzious contends that Knight's guaranty could not be terminated by the conditions of the February 28 letter being met, because the terms of the guaranty itself provided for termination only upon written notice given by the guarantor and acknowledged by the bank (which termination would not apply to obligations already incurred by the debtor). We agree with the District Court that the benefit of the guaranties could be waived or surrendered by the bank without regard to the means prescribed for cancellation by a guarantor. Arguably the bank might not be able to surrender the benefit of one guaranty to the detriment of the other guarantor who, subsequently becoming obligated to pay, might have been deprived of his right to contribution. This question we need not explore, because we think that the joint letter to Knight and Wirotzious surrendered the bank's rights against both guarantors upon performance of the recited conditions.

The District Court found that the conditions were met. The bank maintained a single ledger sheet showing loans, advances and payments for the account of Saltzman Machine, and the balance thereon on February 28 was $49,772.47, the total of the two notes referred to in the letter of that date.[4] Between May 1, 1968 and July 30, 1968 Saltzman Ma-

chine paid the bank more than $50,000. Meanwhile, however, the bank had made other advances to Saltzman Machine, represented by new notes. The court found that the payments totalling $50,000 were under Alabama law properly applied to the charges on the bank's ledger sheet in the order in which the charges accrued, citing Mayer Bros. v. Gewin, 200 Ala. 391, 76 So. 307 (1917), with the result that the notes referred to in the February 28 letter had been paid and, the conditions of the letter having been met, Knight's guaranty[5] was at an end. We are not able to say that this conclusion is wrong.[6]

Affirmed in part and reversed and remanded in part. Each party shall bear his own costs.

---

3. So that Wirotzious paid Saltzman Machine's debt to the bank when he was not obligated to do so.

4. The parties attach no significance and we do not to the difference of $10.07 in the ledger figures and the figures in the letter.

5. And presumably Wirotzious's also, though the court did not refer to that question.

6. The bank officer who calculated the amount to be discharged by Wirotzious's executing his own note testified that she considered the principal amount to be the aggregate of unpaid balances on the two notes described in the February 28 letter. Wirotzious himself testified, however, that the accounts receivable note was paid off with Saltzman Machine funds.