**FIRST NAT. BANK OF MONTGOMERY v. MONTGOMERY COTTON MFG. CO.**

(3 Div. 665.)

(Supreme Court of Alabama. June 26, 1924.)

**1. Estoppel ☞75—Trover and conversion ☞ 11—Payee's carelessness in allowing dishonest employee to handle checks held no defense to suit for value of check converted on forged indorsement.**

Payee's carelessness in allowing his bookkeeper, who previously misappropriated funds, to handle payee's checks, *held* not a defense in suit against bank to recover value of check paid by defendant to bookkeeper on latter's forged indorsement of payee's name.

**2. Bills and notes ☞516—Face amount of check is prima facie its value.**

The face amount of a check is prima facie evidence of its value, in view of Acts 1909, p. 126, §§ 24, 60, 61, 185, 192.

**3. Bills and notes ☞1—Negotiable instrument is a "chose in action."**

A negotiable instrument is a "chose in action" (citing Words and Phrases, Second Series, Chose in Action).

**4. Trover and conversion ☞2—Check held subject to conversion.**

A check, which because of its conformity with Acts 1909, p. 126, §§ 1, 7, was a negotiable instrument, *held* a chose in action, subject to conversion for which trover would lie.

**5. Bills and notes ☞209—How title to check payable to payee's order may be procured stated.**

Where a check was payable to payee's order, it was not transferable by delivery, but title to it could be derived only through the indorsement or assignment of it by payee, or by his duly authorized agent for that purpose, and could be negotiated by indorsement of the holder, the payee, in writing on the instrument itself, completed by delivery, in view of Acts 1909, p. 126, §§ 30–33.

**6. Bills and notes ☞201—Title to check, indorsement on which was forged, did not pass to transferee unless payee was precluded from asserting forgery or want of authority of indorser.**

Title to a check, indorsement on which was forged within Code 1907, § 6910, could not pass to defendant transferee, unless the payee was precluded from setting up the forgery or want of authority of indorser, in view of Acts 1909, p. 126, §§ 21–23.

**7. Bills and notes ☞201—Transferee bank, acquiring check containing forged indorsement of payee's name, held to acquire no title to check.**

Where plaintiff company's bookkeeper, who was authorized only to indorse plaintiff's checks to deposit for plaintiff's account with the F. bank, indorsed on a check (payable to plaintiff's order) plaintiff's name, making it payable to himself, and after indorsing his name transferred it to defendant bank, which credited bookkeeper's account with the amount of the check, *held* that defendant bank acquired no title to the check.

**8. Trover and conversion ☞66—Evidence in suit for conversion of check held to justify general affirmative charge for plaintiff.**

In action in trover against bank for conversion of the check on which plaintiff's bookkeeper forged plaintiff's indorsement, evidence *held* to justify giving of general affirmative charge with hypothesis in favor of plaintiff.

**9. Accord and satisfaction ⬤�científ26(1)—Payment ⬤➝65(6)—Burden of proof of payment or accord and satisfaction on party alleging it.**

The burden of proving payment or accord and satisfaction is on the party alleging it.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action in trover by the Montgomery Cotton Manufacturing Company against the First National Bank of Montgomery. Judgment for plaintiff, and defendant appeals. Affirmed.

Steiner, Crum & Weil, of Montgomery, for appellant.

The check in question was not the subject of trover; there was no privity of contract between the parties hereto. Code 1907, §§ 5081, 5136; Tibby Bros. v. F. & M. Bank, 220 Pa. 1, 69 Atl. 280, 15 L. R. A. (N. S.) 519; Elyria Sav. Bank v. Walker Bin Co., 92 Ohio St. 406, 111 N. E. 147, L. R. A. 1916D, 433, Ann. Cas. 1917D, 1055; Ballard v. Home Nat. Bank, 91 Kan. 91, 136 Pac. 935, L. R. A. 1916C, 166. To be liable, appellant must have had actual knowledge of the forgery. Code 1907, § 5011; Postal Tel. Co. v. Citizens' Nat. Bank, 228 Fed. 601, 143 C. C. A. 123; Swift v. Smith, 102 U. S. 442, 26 L. Ed. 193; Claflin v. Farmers' Bank, 36 Barb. 540. Where a bank pays on a forged indorsement, it is not liable for the fraud made possible by the plaintiff's negligence. Armour v. Grene County Bank, 112 Fed. 631, 50 C. C. A. 399; Harter v. Bank, 63 N. J. Law, 578, 44 Atl. 715, 76 Am. St. Rep. 224; Weisenberger Co. v. Barberton Bank, 84 Ohio St. 21, 95 N. E. 379, 34 L. R. A. (N. S.) 1100; Salen v. State Bank, 110 App. Div. 636, 97 N. Y. Supp. 361.

Ludlow Elmore and C. P. McIntyre, both of Montgomery, for appellee.

The check, like a promissory note, was a negotiable instrument. Acts 1909, p. 126, §§ 24, 61, 185, 192. A forged signature is wholly inoperative. Acts 1909, §§ 21, 23. A check is a chose in action that may be the subject of conversion. Brickhouse v. Brickhouse, 33 N. C. 404; K. C. Cas. Co. v. Westport Ave. Bank, 191 Mo. App. 287, 177 S. W. 1092; Standard, etc. Co. v. Corn Ex. Bank, 220 N. Y. 478, 116 N. E. 386, L. R. A. 1918B, 575; L. & N. v. Citizens' Bank, 74 Fla. 385, 77 South. 104, L. R. A. 1918C, 610; Fid. & Dep. Co. v. Bank, 267 Fed. 367; U. S. Portlant Cement Co. v. U. S. Nat. Bank, 61 Colo. 334, 157 Pac. 202, L. R. A. 1917A, 145. The measure of damages is the face of the check. McPeters v. Philips, 46 Ala. 496.

MILLER, J. This is a suit by the Montgomery Cotton Manufacturing Company, a corporation, against the First National Bank of Montgomery, a corporation, for damages for conversion by defendant of a check dated June 17, 1922, drawn by Robert McK. Jones & Co. upon the First National Bank of St. Louis, Mo., payable to the order of the Montgomery Cotton Manufacturing Company, plaintiff, in the sum of $2,500.

The defendant pleaded general issue, not guilty, with leave to give in evidence in defense any matter that might be specially pleaded. The jury returned a verdict in favor of the plaintiff and, from a judgment of the court thereon, this appeal is prosecuted by the defendant.

Robert McK. Jones & Co. owed plaintiff $2,500, and signed and sent this check described in the complaint to it to be credited on this debt. W. W. Pugh was the bookkeeper and office man of plaintiff. He received the check for plaintiff, and wrote and stamped in part on the back of it, the following: "Pay to the order of W. W. Pugh, Montgomery Cotton Mfg. Company, by C. C. Cobb, General Manager." Underneath this was written his name, "W. W. Pugh." Pugh then carried the check to the defendant, presented it to defendant's receiving teller, who, at Pugh's direction, placed the amount, $2,500 of the check to the credit of his individual account with defendant, which Pugh afterwards withdrew on his own checks for his own use. The defendant indorsed the check and in the usual course of business transmitted it to its correspondent for collection, and it was presented to and paid in full by the drawee, the First National Bank of St. Louis, to the agent or correspondent of defendant, and no part of it has ever been paid by the defendant to the plaintiff.

The basis of this suit is that the indorsement of the plaintiff, the payee, on the back of the check, was a forgery made by W. W. Pugh without authority. The amount of the check was placed to Pugh s credit with defendant, and defendant afterwards collected the check from the drawee and has paid no part of it to the plaintiff, and allowed Pugh to draw it out on checks for his individual use.

[1] W. W. Pugh, witness for plaintiff, was cross-examined by the defendant. The defendant offered to prove by him, and the court would not permit it, that prior to the receipt of this check, within two years, the plaintiff or its representatives, knew that witness had on previous occasions and while in the employ of Elmore, Brame & Co., misappropriated funds of the latter, and that notwithstanding he was continued there in that service with the same opportunities to misappropriate funds of the plaintiff. The defendant asked, and the court sustained objection of plaintiff to, the following ques-

---

tion to the witness Pugh on cross-examination:

"Isn't it a fact that a short time before the plaintiff company here was organized, Elmore, Brame & Co., in whose employ you were, took over the business and organized the plaintiff company, and have been officers in it from the beginning, and that while you were in their employ, and a short while before the present concern was organized, you defaulted in like manner as the defalcation now charged to you; that Elmore and Brame were aware of that fact, and continued you in their employ, allowing you to work out the amount for which you defaulted?"

This would not tend to show that Pugh had any right or authority to indorse the name of plaintiff on the check. This evidence would not deprive plaintiff of the right to the check or its value because he did not use ordinary care to prevent its name from being forged on it. Carelessness in allowing a person formerly dishonest to handle checks payable to plaintiff would not deprive plaintiff of his ownership of this check, if his name was forged as indorser thereon by that person. The court did not err in these rulings. People v. Bank of N. Am., 75 N. Y. 547 561, 562.

[2-4] This check is a negotiable instrument under the definition in sections 1 and 7 of Acts 1909, p. 126. It is in writing, signed by the drawer; it is an order to pay a sum certain and unconditional; it is payable to order of plaintiff, and the name and address of the drawee is indicated with reasonable certainty thereon as this statute requires; and it is payable on demand as no time for payment is expressed in it. Sections 1 and 7 of the act (Gen. Acts 1909, p. 126).

Is a check, this check, the subject of conversion? Is a check a chose in action that may be the subject of conversion? In 30 Cyc. p. 2012D, we find the following general text:

"As choses in action represented by written instruments or something capable of seizure and possession are subjects of conversion, trover will lie for bills of exchange, promissory notes, and other forms of negotiable instruments or commercial paper, which have been wrongfully converted."

And, on the same page (B) we find:

"Written instruments are as a general rule subject to conversion, and trover will lie for their conversion."

In Lowremore v. Berry, 19 Ala. 130, 54 Am. Dec. 188, this court held trover will lie for the conversion of a promissory note. This principle is sustained and approved in Trulove v. Brown, 21 Ala. 544. In McPeters v. Phillips, 46 Ala. 496, the suit was in trover for the conversion of a promissory note, and the court wrote:

"In trover for a bill, or note, or other chose in action, the measure of damages is prima facie the value on its face."

This clearly indicates the court is of the opinion that trover will lie for a bill or note or other chose in action. The drawer of this check stands in some respects in similar relation to the payee of the check as the maker of a note to the payee of the note. The maker of the check engages with the payee that on due presentation it will be paid, and, if it be dishonored and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the payee or holder or any subsequent indorser who may be compelled to pay it. There is a contractual obligation, prima facie at least, between the drawer and the payee of the check, by which the former agrees to pay the latter the face amount thereof, if the drawee fails to do so on timely and proper presentation. The check on its face is evidence of value to the amount thereof prima facie. Section 61, Act 1909, p. 136. See, also, sections 60, 24, 185, and 192, of this act; McPeters v. Phillips, 46 Ala. 496.

In Munter v. Rogers, 50 Ala. 292, this court wrote:

"If it is intended to be an action of trover for the note, which the defendants are alleged illegally to have gotten into their possession on the sale of the stock, then a complaint in trover for the conversion of the note would be proper."

In Blackman v. Lehman, Durr & Co., 63 Ala. 547, 35 Am. Rep. 57, this court held:

"It is a principle, almost universal in its application, that no man's property can be taken from him without his consent, express or implied, except by due process of law * * * An exception to this rule, firmly established, is that of negotiable or commercial paper, transferable by delivery."

The court also held in this case the owner of a nonnegotiable bond may maintain an action of trover for its conversion. In L. & N. R. R. Co. v. Citizens,' etc., Bank, 74 Fla. 385, 77 South. 104, L. R. A. 1918C, 610, it was held that the payee of a check may maintain trover against the bank upon whom the check was drawn, which paid the check to an unauthorized person, falsely representing himself to be the agent of the payee to indorse the check and receive the proceeds.

In Kan. City Casualty Co. v. Westport Ave. Bank, 191 Mo. App 287, 177 S. W 1092, the court held trover would lie for the conversion of checks transferred without authority of the payee, against the bank that cashed them to the person unauthorized to transfer them and received the proceeds, which were afterwards collected from the drawee bank by the defendant, the interme-

diate and intermeddling bank. See, also, Standard S. S Co. v. Exchange Bank 220 N. Y. 479, 116 N. E. 386, L. R. A. 1918B, 575, and U. S. Portland Cement Co. v U. S. National Bank, 61 Colo. 334, 157 Pac. 202, L. R. A. 1917A, 145, which sustains this principle.

In 1 Words and Phrases (Second Series) p. 686, we find that a negotiable instrument is a chose in action. See Beall v. Russell, 76 Misc. Rep. 244, 134 N. Y. Supp. 633.

Under the foregoing authorities we must and do hold this check is a chose in action that is subject of conversion, and trover will lie for the conversion of it.

[5-7] Did the plaintiff indorse the check, or was its name signed thereto without authority, express or implied, amounting to a forgery? Did W W. Pugh. with intent to injure or defraud the plaintiff, the payee of this check, falsely make the indorsement of plaintiff's name thereon? If so, then it was a forgery. Section 6910, Code 1907. This check was not transferable by delivery. It is payable to the order of plaintiff. The title to it can be derived only through the indorsement or assignment of it by the payee, the plaintiff, or by a person duly authorized by the payee to transfer it. It is payable to order, and it can be negotiated by the indorsement of the holder, the payee, in writing on the instrument itself, completed by delivery. Sections 30–33, Acts 1909, p. 132. If that indorsement of plaintiff's name on the check is forged or made without its authority, then it is wholly inoperative, and no title to it passed to the defendant; unless the plaintiff is precluded from setting up the forgery or want of authority. Sections 21–23, Acts 1909, p. 131.

The evidence showed that the words on the back of this check, "Pay to order of W. W. Pugh," were written by him on a typewriter, and the words "Montgomery Cotton Manufacturing Company by C. C. Cobb, Gen. Mgr.," were also written by him; and that he also wrote his name "W. W Pugh," underneath the indorsement. He also stated the words "Montgomery Cotton Manufacturing Co. by ———," were impressed on the back by him with a rubber stamp to which he had access in the office of plaintiff, and he wrote the words "C. C. Cobb, Gen. Mgr.," thereon. After making this indorsement on the check, he carried it to the receiving teller of defendant, handed him a deposit slip showing proceeds to be deposited to his own account, which was done by the defendant. W W. Pugh drew this $2,500 out of the bank of defendant by his individual checks for his own use. The defendant collected from the payee bank the $2,500, and paid no part of it to plaintiff. The plaintiff kept no account in the defendant's bank; its account being with the Fourth National Bank. Pugh was the bookkeeper and clerk of plaintiff. He

testified, and the evidence showed, the plaintiff did not authorize him to indorse this check, and did not know that he had done so, that plaintiff instructed him and his only authority was from plaintiff to indorse all checks with this rubber stamp with these words, "For deposit account of Montgomery Cotton Manufacturing Company." and to deliver them to the Fourth National Bank of Montgomery to be credited on account of plaintiff in that bank. The indorsement on this check of plaintiff's name making it payable to W W. Pugh or order, was falsely done and without any authority from plaintiff; it was done by Pugh with intent to injure or defraud the payee, the plaintiff, and did injure the plaintiff, and this rendered the indorsement a forgery. Authorities supra. This transfer of it to the defendant was inoperative, conveyed no title to it to the defendant, unless the plaintiff is precluded from setting up the forgery or want of authority.

The plaintiff made no deposits with the defendant, carried no account with it, and Pugh had no authority to indorse checks of plaintiff, except "for deposit for plaintiff's account with the Fourth National Bank." This would not preclude or estop plaintiff from setting up this forgery or want of authority of Pugh. There is no evidence in the record upon which to base an estoppel. In a similar case to this one, and under similar circumstances, it was so held in Kansas City Casualty Co. v Westport Ave. Bank, 191 Mo. App. 287, 177 S. W 1092. See, also, Standard S. S. Co v Exchange Bank, 220 N. Y. 478, 116 N E. 386, L. R. A. 1918B, 575; U. S. Portland Cement Co v U. S. Nat. Bank, 61 Colo. 334, 157 Pac. 202, L. R. A. 1917A, 145, and authorities supra.

[8] There was evidence of the value of the check; and it appears defendant collected from the drawee the full amount of the check. The check is itself prima facie evidence of its value to the amount in its face. McPeters v. Phillips, 46 Ala. 496. The undisputed evidence showed this check belonged to the plaintiff, it was payable to the order of plaintiff, plaintiff's name as an indorsement was forged on it, and it was converted by the defendant. The plaintiff was deprived of the check by defendant. There was evidence as to the value of the check; there was no evidence precluding or estopping plaintiff from setting up the forgery by, or want of authority of Pugh to make the indorsement, and deposit it with the defendant to his account. So we must hold the court did not err in giving the general affirmative charge, with hypothesis, in favor of the plaintiff.

[9] The defendant asked this written charge, which was refused by the court:

"Under the evidence in this case, the plaintiff is not entitled to recover the amount of the

check for the conversion of which this suit was brought, with interest thereon."

There was evidence that the check was worth $2,500, its face value and that defendant collected that amount on it from the ·drawee. The burden of proof of payment or accord and satisfaction is on the defendant; it is an affirmative fact, which must be proved by the party alleging it; Michie Dig. vol. 10, p. 927 § 46 (5); Wilkerson v. Sorsby, 208 Ala. ·346, 94 South. 481, head note 3; Robinson v Smith, 207 Ala. 378, 92 South. 546, head note 1

The record shows that Pugh testified:

"The account of Robert McK. Jones & Co., the drawer of the check for $2,500, was closed along in the fall of 1922 by his [witness'] taking some small checks of the plaintiff company and with his own check, all aggregating $2,500, for which he credited the account covering the item of $2,500 in question and the account was ended."

There is no evidence showing what amount Pugh paid on this account with his individual check. The burden was on defendant to show the partial payment and the amount thereof, which it failed to do, and the court did not err in refusing that written charge requested by the defendant. Authorities supra.

The record is free from error, and the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.